## Charles York *v.* Isaac B. Allen and others.

It is extremely doubtful whether one commissioner appointed under the act of the legislature "authorizing a loan of moneys to the citizens of this State," passed April 11, 1808, can demand the principal sum due on a mortgage given to the commissioners, so as to put the mortgagor in default for non-payment, and justify a sale of the mortgaged premises. *Per* Wright, J.

But it is very clear that a notice and sale by one commissioner only, is a nullity, and a conveyance executed by him to the purchaser at such sale a void act.

In 1849 and 1850, there being but one loan commissioner under the act of 1808, in the county of Chenango, the person appointed in 1849 refusing to qualify or act, the sole commissioner proceeded to notify mortgagors that the payment of the amount due on their mortgage would be required November 1, 1849. On that day he caused a notice to be first published of a sale of the premises embraced in such mortgage on the 7th of February, 1850. This notice was signed by him as "loan commissioner," and was published once in each week for twelve weeks. On the day appointed he put the premises up at public auction, and sold the same to B., the highest bidder, and afterwards gave him a deed not in conformity with the statute, and not having the seal of office of the commissioners affixed, nor two witnesses thereto. *Held*, that the whole proceeding was a nullity; the sole commissioner having no authority either to sell or convey.

It is the commissioners of loans in their corporate capacity, that the statute provides, in case of default in payment of principal or interest, shall be seized of an absolute, indefeasible estate in the lands, &c. mortgaged to them; *they* are required to give the notices and make the sale; and *they* only, under their seal of office, can convey to the purchaser.

Where a grantor covenants in his deed that he is the lawful owner of the premises conveyed, and that the same are free from all legal claims and incumbrances, it is no defence to an action to foreclose a mortgage given for the purchase money, that the premises were at the time subject to the lien of a loan office mortgage, where there has been no eviction of the purchaser, or disturbance of his possession.

If there is any breach of the covenant against incumbrances, the purchaser has his remedy by action. He cannot voluntarily yield up the premises to one having no title thereto, and then ask that his equity of redemption shall not be foreclosed, or he be made personally to respond for any deficiency.

Although the statute declares that in case of default in payment of a mortgage to loan commissioners when demanded, the commissioners shall

be seised of an absolute, indefeasible estate in the lands, &c., this will not entitle them to maintain ejectment in such a case.

Nor does the statute seem to contemplate that they are to enter into and take possession of the lands, until after a failure at public sale to obtain a bid or the amount due on the mortgage, or, having obtained such bid, there shall be an omission to pay.

*Appeal from a judgment of the Supreme Court, modifying and affirming a judgment entered on the direction of a single judge in a foreclosure suit.*

On the 19th day of March, 1842, the plaintiff, York, and Esther, his wife, for the consideration of twelve hundred dollars, executed and delivered to the defendant, Allen, a deed of conveyance in fee simple, with full covenants of warranty, of the lands in controversy in this suit—the grantors covenanting among other things, that they were the true and lawful owners of the said premises, and that the same were free from all legal claims or incumbrances whatever. In consideration of said deed, and the covenants therein contained, the defendant, Isaac B. Allen, executed the bond, and he and defendant, Betsey, his wife, executed the mortgage mentioned in the complaint, for the whole purchase money of said premises; which mortgage the plaintiff seeks to foreclose. On the 13th day of June, 1808, one Russel Steward, the then owner of the premises, and through whom the plaintiff derived his title, executed to the commissioners for loaning money of the county of Chenango, a mortgage of the same premises, to secure the payment of the sum of twenty-six dollars loaned to him, Steward, by said commissioners. This loan mortgage was a valid and subsisting lien upon said premises, at the time York's deed to Allen bears date. In February, 1850, this loan mortgage was foreclosed, and the premises sold by Laman Ingersoll, Commissioner of Loans—there being but one commissioner at the time—and were bid off by the defendant, Ansel Brown, for the sum of $43.83, and Ingersoll, as commissioner, executed to him a deed; and on the first day of April, 1850, Brown took possession of the premises

and has remained in possession ever since. In December, 1851, the defendant, Brown, mortgaged the premises in question to the defendant, Wells, to secure the payment of $500. York never has paid, or offered to pay the loan mortgage, but seeks by this suit to foreclose the mortgage given by the defendants, Allen and wife, and to make Allen pay the deficiency—the whole amount being some $1800. The cause was tried before Justice Mason, at a special term of this court, held in Chenango county, in August, 1858, and the plaintiff had judgment for the relief demanded in the complaint, and also that the loan mortgage be first paid out of the proceeds of the sale. The defendants, Allen, Brown and Wells, appealed to the general term, and in May, 1859, the judgment was affirmed, with a certain modification expressed in the order of affirmance. The defendants, Allen, Brown and Wells, appealed to this court.

*R. K. Bowne*, for the appellant Allen.

*S. S. Merritt*, for the appellants Brown and Wells.

*W. Newton*, for the respondent.

Wright, J. The action was to foreclose a mortgage given in March, 1842, by the defendants, Allen and wife, to the plaintiff, to secure the payment of the sum of $1200 in six annual installments, with interest annually from 1st of April, 1842. The mortgage was upon two parcels of land; the one of principal value being a lot described as containing twenty-five acres and upwards. Allen paid the interest up to April, 1848, and a part of the principal, but paid nothing afterwards. Brown and Wells were made defendants as claiming to have some interest in, or lien upon the mortgaged premises, or a part thereof, which interest or lien it was alleged accrued subsequently to the lien of the plaintiff's mortgage.

The mortgaged premises were sold to Allen in March, 1842, and he gave back to the plaintiff his bond and the mortgage in question to secure the payment of the purchase money. In April, 1850, Allen voluntarily surrendered the possession of the twenty-five acre lot, parcel of the mortgaged premises to the defendant, Brown, the latter claiming title thereto under a deed from one Ingersoll, as commissioner for loaning moneys in the county of Chenango, under the act of April 11, 1808, entitled "An act authorizing a loan of moneys to the citizens of this State." It was proved that the amount due and unpaid on the defendant's bond and mortgage was $1807.82.

Under these circumstances it is difficult to perceive what possible defense Allen, the mortgagor, can have. It is said that the plaintiff covenanted in his deed of the premises that he was the lawful owner thereof, and that the same were free from all legal claims or incumbrances whatever. But suppose he did. It is not disputed that he was seised of the premises; and if there was any breach of the covenant against incumbrances, the defendant had his remedy by action. He could not voluntarily yield up the premises to one who, it will be seen hereafter, had no title whatever thereto, and ask that his equity of redemption shall not be foreclosed, or he made personally to respond for any deficiency. It is urged that the commissioners could have maintained ejectment against him the moment the default in the non-payment of the loan office mortgage occurred; and that he was therefore right in giving up the possession to save himself from the costs of a litigation at the suit of the commissioners, in which he was sure to be beaten. To this there are conclusive answers.

*First.* It is by no means clear that the commissioners could have maintained ejectment immediately upon the default occurring, or at all. The act, it is true, provides that in case of default in payment of interest or principal, when demanded, the commissioners "shall be seised of an

absolute indefeasible estate in the lands, tenements or here-
ditaments thereby mortgaged to them, their successors and
assigns, to the uses in this act mentioned." (Laws of 1808,
chap. 216, § 15.)  This would not entitle them to maintain
ejectment; although the mortgagor would have no legal
title that he could directly enforce against the law itself.
The uses in the act mentioned are to sell the lands at pub-
lic vendue, after notice given, to the highest bidder, and
from the proceeds of the sale, to retain in the hands of the
commissioners the moneys due on the mortgage, with the
expenses of the sale, paying over to the mortgagor, his
heirs or assigns, any surplus.  (§§ 19, 20.)  If there are
no bids at the time appointed for the sale, or if the person
to whom the property has been struck off, shall not pay
for the same, the commissioners can enter into and take
possession of the lands, and let them on the best terms
they can for the benefit of the State, until the third Tues-
day in April then next, and on the latter day (having given
at least six weeks notice), again to offer them at public
vendue to the highest bidder.  If upon such sale no person
shall bid, or offer to give for the lands the sum of money
for which the same were mortgaged and remaining unpaid,
with the interest then due thereon; or if any person to
whom they shall be struck off shall not pay for the same,
then the commissioners are to purchase and hold the same
for the benefit of the people of the State; but if the
mortgagor, or his or her heirs or assigns, shall at or before
the sale of the mortgaged premises, pay to the commis-
sioners all such sums as shall be payable on such mortgage,
for principal and interest, together with the charges for
advertising the same, then the commissioners are to accept
the same, and permit the owner or his heirs or assigns to take
possession of the mortgaged premises, and to hold the same
until default shall be made in payment of any further sum
on the mortgages.  (§ 19.)  Thus the statute provides for
reimbursing the State for the moneys loaned on the lands,

either by public sale of them to the highest bidder, or by payment by the mortgagor after default and before sale, or by purchasing them in, under certain circumstances, for the benefit of the State. The commissioners cannot maintain an ejectment; nor does the statute seem to contemplate that they are to enter into and take possession of the lands, until after a failure at public sale to obtain a bid for the amount due on the mortgage, or having obtained such bid, there shall be an omission to pay. If the commissioners make a legal sale and conveyance of the premises, as the act prescribes, the title vests in the purchaser; if they purchase them in, it vests in the State.

*Second*, There was no eviction of the defendant; nor was any threatened; nor did they take any steps to enter into and dispossess the defendant summarily or otherwise. Indeed there are strong grounds to suspect collusion between Allen and Brown in the matter of the pretended sale and purchase under the mortgage to the loan commissioners. They were partners, doing business on the premises covered by the mortgage, and to which Allen had title. The payment was demanded of a mortgage taken by the commissioners of loans in 1808, for the trifling sum of twenty-six dollars, in which one Steward was the mortgagor, and which covered the twenty-five acre lot. It is found that it was properly demanded, and it is to be inferred that not only the mortgagor, but his assignee in possession of the premises, had notice. The interest had been paid on the mortgage up to June, 1849, so that only the principal sum of twenty-four dollars was due. Instead of discharging this trifling lien on property valued at over $1200, and looking to the plaintiff's covenant against incumbrances for indemnity, or at least notifying the plaintiff that the principal of the mortgage had been demanded, Allen, the owner of the premises, allows them to be sold to his partner, Brown, for the sum of $43.83, and then voluntarily surrendered their possession to the latter.

Nor did the defendant Brown establish any defense. The Steward mortgage for $26 was given in June, 1808, in pursuance of the act of that year, entitled "an act authorizing a loan of moneys to the citizens of this state." That act provided for the appointment of two commissioners in each of the counties of the state, to discharge the trusts and duties under it. (§ 3.) The commissioners in the several counties were to be bodies politic and corporate, in fact and in law, by the name and style of "the commissioners for loaning money of the county," of which they were respectively commissioners, with full power to every of the said bodies politic to have and use a common seal, and, under the same seal, and in the name of the same bodies politic, to give receipts, to take mortgages, and to execute releases and conveyances of the mortgaged premises, and to sue and be sued, and generally with all such powers as are necessary for the due execution of the trusts reposed in them by this act." (§ 6.) All the powers conferred were upon this *quasi* corporation, and the trusts and duties prescribed by the act could only be discharged by the commissioners as such. It is extremely doubtful whether one commissioner could demand the principal sum due on a mortgage, so as to put the mortgagor in default for non-payment, and justify a sale of the mortgaged premises. But, however this may be, it is very clear that a notice and sale by one commissioner would be a nullity, and a conveyance executed by him to a purchaser at such sale a void act. In this case, the interest was paid on the Steward mortgage given to the loan commissioners in 1808, up to the 5th June, 1849. The principal was not called for by the comptroller until the 1st August, 1849, and then payment was required to be made on the 1st November following. In 1849 and 1850 there was but a single loan commissioner under the act of 1808 in the county of Chenango, the person appointed in 1849 refusing to qualify or act. The commissioner proceeded to notify the mortga-

gors (Steward included) that payment of the amount due on their mortgages would be required on the 1st November, 1849. On the latter day he caused a notice to be first published in a newspaper printed in the county of Chenango, of a sale of the premises embraced in the Steward mortgage, on the 7th February, 1850. This notice was signed "Laman Ingersoll, loan commissioner," and was published in the newspaper once in each week for twelve weeks successively. On the 7th of February, 1850, he attended in pursuance of the notice, and the premises were put up by him at public auction, and sold to the defendant and Brown for $43.83, he being the highest bidder. Whether this was the amount due on the mortgage, and the expenses of the sale, or whether Brown, in fact, paid his bid, does not appear. Ingersoll, however, after the sale, gave Brown a deed of the premises, not in conformity with the act of 1808, or executed as that act required. The parties to the deed are Laman Ingersoll, commissioner for loaning money of the county of Chenango, and Ansel Brown. Ingersoll acknowledges the receipt of the consideration money instead of the commissioners. The grant is by him and not by the commissioners, and does not convey (as the statute prescribes), all "the estate, right, title, interest, claim and demand whatsoever" of the commissioners, and their successors, to the premises. The seal of office of the commissioners is not affixed to the deed, nor were there two witnesses thereto, as required by the act. (Laws of 1808, chap. 216, § 23.) The deed was subscribed "Laman Ingersoll, loan commissioner," with his seal attached, and there were no witnesses thereto.

The whole proceeding, therefore, by which Brown was invested with any claim or title to the mortgaged premises, was a nullity. Ingersoll had no authority either to sell or convey. (*Powell* v. *Tuttle*, 3 Comst. 396; *Olmsted* v. *Elder*, 1 Seld. 144.) It is the commissioners, in their corporate capacity, that the statute provides, in case of default

in payment of principal or interest, shall be seised of an absolute indefeasible estate in the lands, tenements and hereditaments mortgaged to them; *they* are required to give the notice and make the sale, and *they* only, under their seal of office, can convey to the purchaser. The statutory system is complete in all its parts. The commissioners are created a body politic and corporate. As such they are to loan the public moneys, taking mortgages in their name of office. If the borrower make default in payment, the statute vests an indefeasible estate in the lands in the commissioners, and their successors and assigns, and forecloses and bars all equity of redemption of the mortgagor in the mortgaged premises. The commissioners are then, after notice, to sell the premises at public vendue, to the highest bidder, if such bid shall be equal to the sum of money for which the lands were mortgaged, and the interest thereon, and the purchaser shall pay the same (and not otherwise), the commissioners are to convey the lands to him by deed, affixing their seal of office, and subscribing their names to the instrument in the presence of two witnesses; and the statute declares that such purchaser "shall and may hold and enjoy the said lands, for such estate as was conveyed to the commissioners by the mortgage executed by the mortgagor, clearly discharged and freed from all benefit and equity of redemption, and all other incumbrances made and suffered after the execution of such mortgage by the mortgagor, his heirs or assigns." It is very plain that all that was done by Ingersoll, either in giving notice or selling under the Steward mortgage, or in conveying the lands to the defendant Brown as purchaser, was nugatory, and Brown acquired no title thereby.

The defendant Wells has no defense. In December, 1851, Brown mortgaged to him the premises in question to secure the payment of four hundred dollars. This mortgage is no lien on the premises, as against the plaintiff's mortgage.

I am of the opinion, therefore, that the judgment of the

supreme court should be affirmed. In that judgment, as modified by the general term, the mortgage executed by Steward to the commissioners of loans of Chenango county was treated as a subsisting lien, and the amount due thereon directed to be deducted from the amount due on the plaintiff's mortgage, and applied to its redemption and payment; and that the plaintiff have leave to redeem, pay and discharge the said mortgage by paying the amount due thereon. This was all that the defendant Allen was legally entitled to ask. The deed under which Brown claimed to hold was void, and of no effect; and Wells' mortgage was void as against the plaintiff's mortgage, and as a lien upon the premises covered by such mortgage.

All the other judges concurred, except SELDEN, J.—who expressed no opinion—and HOGEBOOM, J., who was for reversal, for the reasons given as follows:

HOGEBOOM, J. Assuming the judgment of the court below to be right in substance, I think there is a substantial defect of parties, which will prevent its having complete legal effect. The complaint sought to foreclose Allen's mortgage, and to set aside Brown's deed and his mortgage to Wells. Both the special and general term held the foreclosure of the loan office mortgage invalid, and consequently ineffectual, but nevertheless allowed a foreclosure of the plaintiff's mortgage on payment of the loan office mortgage out of the proceeds of the sale; or, as modified at general term, on payment of the latter mortgage to the loan commissioners. Prior to this suit the loan office mortgage had become due, and a default had occurred in the payment of the principal and interest moneys secured thereby. The loan office commissioners, or the people of the state, had in consequence become vested with a redeemable or irredeemable estate or interest in the premises. This interest remained in them if the loan office sale was invalid. They—that is the people or the loan office com-

8

missioners—were necessary parties to a suit for the foreclosure of the plaintiff's mortgage, at least if it were attempted thereby, as is done by the decree in this suit, to cut off their rights and to pass a perfect title to the purchaser under that decree. It is not an answer to this to say that the commissioners are protected because payment of the loan office mortgage is required to be made to them. The objection remains, that they are not parties to the suit; that they have a right to be heard, and may possibly set up a state of facts which will preclude any relief to the plaintiff. There is no more dangerous practice than to condemn or foreclose parties unheard.

I regard this as an effectual objection to the affirmance of this judgment, unless the case can be disposed of by a modification of the decree in question, leaving the loan office mortgage, and the rights attempted to be acquired under it, untouched. But I do not well see how this can be done. According to the decision of this court in the case of *Pell* v. *Ulmar* (18 N. Y. R. 139), the utmost right which the plaintiff or the assignee of the mortgagor has is not a general equity of redemption, but a special right to redeem. He does not in his complaint, and did not at any stage of the trial, attempt the enforcement of any such right. He does not claim to redeem from the loan office mortgage, or offer to pay the sum due upon it; but simply to set aside the loan office sale, apparently treating all the interest of the loan office commissioners as having passed to the purchaser at that sale.

If it be said, this suit may nevertheless be treated as simply a foreclosure of the plaintiff's mortgage, and the decree modified accordingly, I think there are several objections to such a proceeding. 1. The complaint seeks much broader relief, and the litigation has been conducted with a view to it; and it would change the whole scope and character of the proceeding to give such an aspect to it at this time. 2. One of the leading objects of a fore-

closure suit is to make a perfect title to the premises sold, and to make all persons parties to the foreclosure who have the remotest interest in the premises. An exception is sometimes made in favor of a prior mortgage, but then the complaint asks and the decree provides that the foreclosure and sale are subject and without prejudice to such prior mortgage. 3. The plaintiff no longer has any such effectual mortgage upon the premises as is set forth in the complaint. He has lost many of his rights and some of his remedies by the default which has occurred in the payment of the loan office mortgage. If the sale under that mortgage had been conducted according to law, his rights would have been forever lost, and this suit must have been dismissed with costs. As it is, he has, as already stated, but a special (if any) right of redemption, and it is *that right* which should have been attempted to be enforced in this action. The defendant Brown, having acquired peaceable possession through the forms of the loan office sale, and peaceable surrender from Allen, can not, according to the case of *Pell* v. *Ulmar*, be treated as a mere intruder, but as clothed with some rights under the loan office mortgage from the combined action of the loan office commissioner and the defendant Allen. How far these rights may be successfully displaced by the plaintiff's action, must be determined by subsequent litigation.

Whatever equities, therefore, in view of some of the facts of this case, the plaintiff may be deemed to have as against some of the parties to this action, he is not in a condition to assert them, by reason of a radical defect of parties, and of substantive allegations in his complaint.

I am of opinion that the judgment of the court below should be reversed, with costs to abide the event, and with leave to the plaintiff to apply to the supreme court, on such terms as that court thinks proper, for permission to amend his complaint and add new parties to the action.

Judgment affirmed.